## Hoyt *et al.* v. Chicago, M. & St. P. Ry. Co.

*(Circuit Court, N. D. Illinois.* July 30, 1889.)

CONTRACTS—CONSTRUCTION.

Defendant leased certain premises to plaintiffs for a term of 10 years, on which plaintiffs agreed to erect a grain elevator in addition to one it then had and to furnish defendant with certain elevator facilities at all times during the term. Defendant agreed "that the total amount of grain received at said elevators shall be at least 5,000,000 bushels on an average for each year during the term of this lease, and, in case it shall fall short of that amount," defendant agreed to pay plaintiffs one cent per bushel on the deficiency. *Held,* that defendant is liable for a deficiency in the amount of actual receipts, notwithstanding large quantities of grain were from time to time tendered to plaintiffs by defendant, and by them refused for the reason that their elevators were full. The contract is intended to cover just such contingencies.

**At Law.** Action on contract.

*John M. Jewett* and *Jewett Bros.*, for plaintiffs.
*Edwin Walker* and *John T. Fish*, for defendant.

GRESHAM, J. On the 18th day of February, 1880, the defendant leased to the plaintiffs, for a term of 10 years from January 1, 1881, lots 1, 2, and 3, in block K, of the original plat of the town of Chicago. The plaintiffs agreed to erect on the lots during the year 1880 an elevator, with storage capacity of 700,000 bushels, which they did, and pay an annual ground-rent of $3,850, and all taxes and assessments levied against the premises, furnish the defendant at all times during the term· with storage capacity for at least 1,000,000 bushels of grain in the elevator to be erected, and in another elevator then owned by the plaintiffs, and standing on lots 1 and 2 of the same block, having storage capacity of about 350,000 bushels. The plaintiffs also agreed that if, in the ordinary course of their business, the capacity of the two elevators should enable them to do so, they would receive and store all the grain carried by the defendant to Chicago for consignment. The eighth article of the contract reads:

"In consideration of the agreement aforesaid, the said party of the first part [the defendant] agrees that the total amount of grain received at said elevators shall be at least five million bushels on an average for each year during the term of this lease, and in case it shall fall short of that amount the said party of the first part agrees to pay to the said party of the second part one cent per bushel on the amount of such deficiency, settlements to be made at the close of each year. And whenever it shall appear at the close of any year that the total of grain received during so much of the term of this lease as shall then have elapsed does not amount to an average of five million bushels for each year, the party of the first part shall pay to the party of the second part one cent per bushel for the amount of such deficiency; but, in case it shall afterwards appear that the total amount received up to that time equals or exceeds the average amount of five million bushels per annum, the amount so paid to the party of the second part shall be refunded, or so much thereof as the receipts of the year shall have exceeded five million bushels, so that the whole amount paid on account of deficiency shall be refunded should the total receipts for the entire term equal or exceed fifty million bushels in all, on an average, or five million bushels for each year."

In 1886 the plaintiffs received from the defendant and stored in the two elevators 2,826,821 bushels of grain, and in 1887 they received and stored 2,957,592 bushels, the amount received during each of the two years, less than 5,000,000 bushels, being 2,173,179 and 2,042,408 bushels respectively. During this period the entire storage capacity of the elevators was constantly occupied by grain received from the defendant's cars, and although the plaintiffs repeatedly refused to receive additional grain tendered by the defendant during the same period, their refusal was always based upon the ground that the elevators were full, and contained more than 1,000,000 bushels. The plaintiffs insist that, under the contract, the defendant owes them one cent per bushel upon the deficiency of the receipts above shown, and demand judgment for that amount. By the third article of the contract the defendant agreed that, so far as it could legally control the same, it would deliver to the plain-

tiffs for storage all the grain it carried to Chicago, and by the article quoted the defendant guarantied that the plaintiffs should annually receive into the two elevators for storage at least 5,000,000 bushels, and if, during any year of the lease, the plaintiffs should receive less than that amount, whether tendered or not by the defendant, it would pay the plaintiffs one cent per bushel on the difference between the amount actually received and 5,000,000 bushels. Under ordinary conditions the plaintiffs could and would have received from the defendant, and stored in the two elevators, more than the guarantied amount of grain. One of the plaintiffs testified that in a single year he had received and stored in an elevator of less than 1,000,000 bushels capacity, 10,000,000 bushels of grain. The defendant knew that grain stored in the elevators would remain there until ordered out by the consignees, and that the ability of the plaintiffs to annually receive 5,000,000 bushels in elevators containing storage capacity of only one-fifth that amount would depend upon the action of the consignees. It happened that during the years 1886 and 1887 the grain received into the elevators from the defendant's cars remained in store so long that the plaintiffs were unable to receive the full amount they were entitled to handle under the contract. The parties contemplated that this might occur, and in their agreement provided for such contingency. In consideration of the promises of the plaintiffs, and the facilities to be furnished by them to the defendant for the storage of grain carried by the latter to Chicago, the defendant agreed and bound itself to do certain things specified in the contract, one of which was, that if, with a storage capacity of 1,000,000 bushels, the plaintiffs should not be able to receive and handle 5,000,-000 bushels annually, and earn commissions on that basis, the defendant would pay to the plaintiffs one cent per bushel on the deficiency. If this is not what the parties intended, why was the word "receive" used as it appears in the eighth article? The meaning of the contract is plain enough when it is interpreted in view of the situation of the parties and the known methods of receiving, storing, and handling grain in elevators in Chicago. Plaintiffs are entitled to judgment for the amount sued for.